Cindy J. HEIDLE, Plaintiff,

v.

THE PROSPECT REEF RESORT, LTD. a.k.a. Prospect Reef Resort Vacation Club, Defendant.

No. 01–CV–0663(SR).

United States District Court, W.D. New York.

Feb. 28, 2005.

Alan R. Feuerstein, Feuerstein & Smith, LLP, Buffalo, NY, for Plaintiff.

Brian P. Fitzgerald, Napier, Fitzgerald and Kirby LLP, Louis H. Siegel, Buffalo, NY; and Daniel G. McDermott, Donovan, Parry, McDermott & Radzik, New York, NY, for Defendant.

## MEMORANDUM and ORDER [1]

ELFVIN, District Judge.

Heidle filed this personal injury action against, *inter alios*, The Prospect Reef Resort, Ltd. ("Prospect Reef") on September 20, 2001. Prospect Reef filed a renewed motion to dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure ("FRCvP") on November 29, 2004.[2] Oral argument was heard and this matter was submitted January 7, 2005. For the reasons set forth below, Prospect Reef's motion will be granted.

Heidle vacationed with her boyfriend, Philip Taylor, at Prospect Reef's resort on Tortola in the British Virgin Islands in 2000. Taylor made the reservation via Interval International, a time-share broker that has been dismissed from this action. Heidle alleges that she injured herself when she fell into a cistern after the cover upon which she had been standing caved in. The parties have engaged in jurisdictional discovery but no evidentiary hearing has been held. Additional facts will be discussed herein where relevant.

When responding to a FRCvP 12(b)(2) motion, "plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir.2003). "Where plaintiff has engaged in jurisdictional discovery, but no evidentiary hearing was conducted, the plaintiff's *prima facie* showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited ... would suffice to establish jurisdiction over the defendant." *Ibid.* (internal quotation marks and citation omitted). In other words, the *prima facie* showing must be factually supported.[3] This Court will construe the affidavits and deposition transcripts in the light most favorable to Heidle and will resolve any doubts in her favor.[4] Matters outside the

---

1. This decision may be cited in whole or in any part.

2. In an Order dated December 2, 2003, this Court denied without prejudice Prospect Reef's first FRCvP 12(b)(2) motion in order to permit Heidle to engage in jurisdictional discovery. Prospect Reef's motion is technically untimely because it was filed after it filed its Answer. *See, e.g., E–Z Bowz L.L.C. v. Prof'l Prod. Research Co.*, 2003 WL 22064259, at *4 n. 2 (S.D.N.Y.2003). This court, however, will overlook such untimeliness and address the FRCvP 12(b)(2) motion on the merits in that lack of personal jurisdiction was raised in the responsive pleading and will exercise its discretion to overlook the untimeliness of Prospect Reef's FRCvP 12(b)(2) motion.

3. *See Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir.1990) ("After discovery [but before an evidentiary hearing], the plaintiff's *prima facie* showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant. At that point, the *prima facie* showing must be factually supported.") (citations omitted); *Kersten v. United Refining, Inc.*, 2004 WL 2202565, at *1 n. 1 (W.D.N.Y.2004) (same); *Brown v. Grand Hotel Eden*, 2003 WL 21496756, at *3 (S.D.N.Y. 2003) (applying *Ball* and noting that the court would "credit as true all of plaintiff's jurisdictional allegations that have evidentiary support").

4. *CutCo Indus. v. Naughton*, 806 F.2d 361, 364–365 (2d Cir.1986); *Equal Employment Opportunity Comm'n v. Plaza Operating Partners, Ltd.*, 2004 WL 1803269, at *2 (S.D.N.Y. 2004).

pleadings may be considered when addressing a FRCvP 12(b)(2) motion.[5]

■■■ "Personal jurisdiction over a defendant in a diversity action is determined by the law of the forum in which the court sits."[6] Under New York law, this Court's two-step inquiry involves consideration of the relevant state long-arm provision—*e.g.*, section 301 of New York's Civil Practice Law and Rules ("CPLR")—and federal due process requirements.[7] Heidle does not contend that jurisdiction exists under CPLR § 302, inasmuch as there was no alleged nexus between Heidle's injury and Taylor's reservation, which was made through Interval, a Florida entity. Under section 301, courts "may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore." Section 301 "has been interpreted to permit the exercise of personal jurisdiction over a foreign corporation that is 'engaged in a continuous and systematic course of "doing business" [in New York] as to warrant a finding of its "presence" in this jurisdiction.'"[8] In other words, "[c]asual or occasional activity does not constitute doing business; rather, CPLR § 301 requires a showing of 'continuous, permanent, and substantial activity in New York.'"[9] Satisfying the "doing business" test of section 301 confers upon a court general jurisdiction over a defendant.[10] In determining whether a foreign corporation is doing business in New York, courts focus "upon factors including: the existence of an office in New York; the solicitation of business in the state; the presence of bank accounts and other property in the state; and the presence of employees of the foreign defendant in the state."[11] It is uncontested that Prospect Reef has no office, bank account, assets, property, employees or telephone listing in New York. As discussed below, Prospect Reef does not have any agents in New York. Moreover, one visit to New York City, almost a decade ago, by Prospect Reef's Chairman of the Board—even assuming *arguendo* that such visit was primarily for business purposes—does not constitute "doing business" in New York.[12]

---

5. *Plaza Operating Partners, supra* note 4, at *2.

6. *CutCo, supra* note 4, at 365.

7. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 171 F.3d 779, 784 (2d Cir.1999).

8. *Plaza Operating Partners, supra* note 4, at *3 (quoting *Frummer v. Hilton Hotels, Int'l, Inc.,* 19 N.Y.2d 533, 536, 281 N.Y.S.2d 41, 227 N.E.2d 851 (1967) (other citations omitted)).

9. *In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000,* 230 F.Supp.2d 403, 407 (S.D.N.Y.2002)(quoting *Landoil Resources Corp. v. Alexander & Alexander, Inc.,* 918 F.2d 1039, 1043 (2d Cir.1990)). *See also Plaza Operating Partners, supra* note 4, at *3 ("The essential factual inquiry is whether the defendant has a permanent and continuous presence in the State, as opposed to merely occasional or casual contact with the State.") (internal quotation marks and citation omitted).

10. *See, e.g., Kaprun, supra* note 9, at 407.

11. *Realuyo v. Abrille,* 2004 WL 605275, at *1, 93 Fed.Appx. 297 (2d Cir.2004). *See also Wiwa v. Royal Dutch Petroleum. Co.,* 226 F.3d 88, 98 (2d Cir.2000) ("New York courts have focused on a traditional set of indicia: for example, whether the company has an office in the state, whether it has any bank accounts or other property in the state, whether it has a phone listing in the state, whether it does public relations work there, and whether it has individuals permanently located in the state to promote its interests.").

12. *Savoleo v. Couples Hotel,* 136 A.D.2d 692, 693, 524 N.Y.S.2d 52 (2d Dep't 1988) ("The mere periodic sending of corporate officers or employees into the State on corporate business is not enough to predicate a finding that a foreign corporate defendant is present for jurisdictional purposes * * *.") (citation omitted).

■ This Court will first address Heidle's argument that Prospect Reef is subject to general jurisdiction in New York based on its relationship with travel wholesaler Travel Impressions, which is located in Farmingdale, N.Y. Judge Buchwald of the Southern District of New York has noted that,

> "in New York, there is well-developed law addressing jurisdiction over foreign hotels. If a New York agent possesses independent authority to make and confirm reservations on behalf of a hotel, the hotel is considered present in this state under § 301; merely soliciting business from prospective customers in New York does not suffice to establish jurisdiction." *Brown, supra* note 3, at *3.

Indeed, "[c]ourts interpreting *Frummer [v. Hilton Hotels International, Inc.,* 19 N.Y.2d 533, 281 N.Y.S.2d 41, 227 N.E.2d 851 (1967)] have required that hotels grant full confirmation powers to their New York agents in order to assert jurisdiction." *Id.* at *5.[13] Consequently, "[a]bsent an outright grant of authority to confirm reservations, an agent is not 'doing business' on behalf of a hotel." *Ibid.* For example, no general jurisdiction was found to exist in *Brown, supra* note 3, at *4 because

> "[the travel wholesaler] Travel Bound is not, in fact, an agent of Hotel Eden, since it does not have the authority to bind Hotel Eden without contacting it. * * * Travel Bound is in no way subject to the control of Hotel Eden, an essential element of an agency relationship."

Similarly, in *Miller v. Surf Properties, Inc.,* 4 N.Y.2d 475, 176 N.Y.S.2d 318, 151 N.E.2d 874 (1958), the New York Court of Appeals held that a travel wholesaler who merely "received [reservations] subject to confirmation" did not establish agency for purposes of general jurisdiction. Judge Desmond construed *Miller* when he noted:

> "The activities of the agency included taking reservations for rooms in the hotel which reservations were subject to acceptance by the hotel. We tried to make it clear in the *Miller* opinion that solicitation of prospective customers and *the reception and transmission of hotel reservations* did not constitute doing business." *Bryant v. Finnish Nat'l Airline,* 15 N.Y.2d 426, 431, 260 N.Y.S.2d 625, 208 N.E.2d 439 (1965) (emphasis added).

Were the law otherwise, any hotel that used a travel agent or wholesaler located in New York would be subject to personal jurisdiction in New York, which is contrary to well-established case law.[14]

---

13. *See, e.g., Welinsky v. Resort of the World D.N.V.,* 839 F.2d 928, 929–930 (2d Cir.1988) (finding that hotel was subject to general jurisdiction in forum because a wholly-owned subsidiary was located in forum and that such subsidiary had "the authority to make and confirm reservations without checking with the defendant"); *Gelfand v. Tanner Motor Tours, Ltd.,* 385 F.2d 116, 119–121 (2d Cir. 1967) (finding Grand Canyon bus tour subject to jurisdiction in New York because independent travel agent located in New York had the power to make and confirm reservations); *Weinberg v. Club ABC Tours, Inc.,* 1997 WL 37041, at *2 (E.D.N.Y.1997) (" * * * the primary focus of courts applying § 301 in hotel and reservation service cases has been on whether the nonresident's New York representative has authority to bind the foreign principal by confirming reservations on its behalf.").

14. *See, e.g., Miller, supra,* at 480–481, 176 N.Y.S.2d 318, 151 N.E.2d 874 (holding that Florida hotel was not subject to general jurisdiction in New York based on relationship with New York travel wholesaler who (1) did not work exclusively for defendant, having acted as "little more than a travel agency" and (2) lacked authority to confirm reservations); *Savoleo v. Couples Hotel,* 136 A.D.2d 692, 693, 524 N.Y.S.2d 52 (2d Dep't 1988) (citing *Miller* for the proposition that, "while Liberty Travel and other independent travel agencies in New York may make reservations and accept payments on the defendant's be-

The record indicates that Travel Impressions lacked the *authority to bind* Prospect Reef because it was unable to book reservations without first confirming such with Prospect Reef. Although Prospect Reef's response to Interrogatory No. 5 ambiguously stated that reservations "would be made in the United States through * * * Travel Impressions,"[15] the record reveals that Travel Impressions lacked the authority to bind Prospect Reef—an element essential to a finding of agency for purposes of general jurisdiction. Indeed, making a reservation via Travel Impressions is not the same as binding Prospect Reef to the reservation, which only occurs when Prospect Reef receives the reservation in the British Virgin Islands and confirms it. Raymond Francis, Prospect Reef's General Manager, testified as follows:

"Q: You used Travel Impressions. That company is located in the State of New York, for what purpose?"

"A: The purpose is the arrangements we have with Travel Impressions is that we provide them a discounted rate and then they go out and get us business."

"Q: I understand. And when they get business, they make reservations?"

"A: They contact our resort." (Francis Dep. at 16.)

Francis further testified that customers paid Travel Impressions and that, after the guest left the resort, Prospect Reef billed Travel Impressions. *Id.* at 17–22. He testified as follows:

"Q: Now, the agreement that we have [between Travel Impressions and Prospect Reef], 39A, allows the operator to confirm the reservations?"

"A: They have to contact the hotel."

"Q: They would contact the hotel. They could confirm the reservations, correct?"

"A: The hotel would have to confirm the reservations."

"Q: The hotel would then advise Travel Impressions whether they have been confirmed and then await the arrival of the guest?"

"A: Yes." (*Id.* at 38.)

Frances also testified that:

"Q: Do Travel Impressions when they get a request for reservations by a travel agent, do they then go to Prospect Reef for the confirmation, or can they issue a confirmation directly?"

"A: Prospect Reef has to confirm the booking."

"Q: And how is that done?"

"A: They would send an e-mail or fax to Moses Barrett?"

half, and thus provide services beyond 'mere solicitation', these limited services are not of such a nature and quality to subject the defendant to jurisdiction under CPLR 301"); *Hinsch v. Outrigger Hotels Hawaii,* 153 F.Supp.2d 209, 213 (E.D.N.Y.2001) (same).

**15.** Interrogatory No. 5 stated:
  "Please identify any tourism office, travel agent, or other entity or individual used by the Defendant in the State of New York or other states of the United States of America to advertise, promote, take reservations, conduct business, or schedule appointment[s] for the Defendant's resort."
Prospect Reef's response to Interrogatory No. 5 stated in relevant part:
  "Defendant objects to this interrogatory for vagueness. Without waiving said objection, reservations for Prospect Reef Resort, Ltd. would be made in the United States through the following companies, none of which are located in New York State: * * * © Travel Impressions, 465 Smith Street, Farmingdale, New York 11735, USA;"

"Q: And then Mr. Barrett would then confirm the reservations?"

"A: Yes." (*Id.* at 93–94.) [16]

Despite the ambiguity of Prospect Reef's response to Interrogatory No. 5, Francis's testimony indicates that Travel Impressions lacked authority to make reservations on Prospect Reef's behalf without confirming such with Prospect Reef. Like the travel wholesaler in *Miller, supra,* Travel Impressions merely accepted reservations subject to approval by the hotel. Consequently, Travel Impressions was not Prospect Reef's agent for purposes of personal jurisdiction.

The fact that Travel Impressions is a wholesaler that solicits business for various entities other than Prospect Reef is another basis for granting Prospect Reef's

motion to dismiss. The Second Circuit Court of Appeals has held that

"[t]he agent must be primarily employed by the defendant and not engaged in similar services for other clients. *See, e.g., Miller v. Surf Properties, Inc.,* 4 N.Y.2d 475, 481, 176 N.Y.S.2d 318, 151 N.E.2d 874 (1958) (holding that independent contractors with many clients are not considered agents of their individual clients for jurisdictional purposes)."

*Wiwa, supra* note 11 at 95.[17]

Similarly, Judge Larimer of this court has held that a hotel/casino was not subject to general jurisdiction in New York based on the fact that, *inter alia,* it paid "commissions to independent travel agents in New York who book rooms or groups at the casino." *Smith v. Circus–Circus Casinos,*

16. This Court need not address the terms of the contract between Prospect Reef and Travel Impressions because it was executed in 2003, well after this action was filed. *Brown,* supra note 3, at *5 n. 8 ("[T]he relevant jurisdictional inquiry under C.P.L.R. § 301 is the time at which the summons and complaint were filed, not at the time of the injury."). Nonetheless, even if the contract were deemed evidence of the parties' past course of dealing, Section VI of the contract provides in relevant part that:

"Reservations may not be confirmed verbally with the **HOTEL** properties. Space may be checked verbally but can only be confirmed by written request. The **HOTEL** property must receive an advice voucher or written reservation within 14 days of verbal confirmation, which guarantees the reservation. The **HOTEL** will continue holding only those reservations, which have been guaranteed in writing."

Moreover, Section VII, which Heidle contends establishes that Travel Impressions may make reservations without confirming such with Prospect Reef, merely *permits* Travel Impressions to take a block of space on credit and resell same for its own profit, and, in any event, all such reservations must be reported to Prospect Reef seven days before the guests' arrival. Prospect Reef also reserved the right to reduce Travel Impressions' room allotment. Such an arrangement, however, is not

substantially distinguishable from *Miller. See, e.g., Bresciani v. Leela Mumbai–A–Kempinski Hotel,* 311 F.Supp.2d 440, 445 (S.D.N.Y.2004) (construing *Miller* and finding that hotel was not subject to personal jurisdiction under section 301 despite contractual arrangement between hotel and travel wholesaler whereby wholesaler solicited business and received and processed reservations for hotel but lacked the authority to confirm reservations without contacting the hotel for anything other than "free sale" rooms, which required no additional confirmation, but which were available to any travel agent).

17. *See also Reers v. Deutsche Bahn AG,* 320 F.Supp.2d 140, 152 (S.D.N.Y.2004) (quoting *Wiwa* for the proposition that, "[t]o find that a corporation is doing business in New York through an agent, a plaintiff must show that the agent is 'primarily employed by the defendant and not engaged in similar services for other clients' "); *Jacobs v. Felix Bloch Erben Verlag fur Buhne Film und Funk KG,* 160 F.Supp.2d 722, 737 (S.D.N.Y.2001) (same). Moreover, Travel Impressions was less of an "agent" for purposes of section 301 than was the wholesaler in *Miller,* who, *inter alia,* listed a New York phone number for the defendant hotel and answered the line as though it were the defendant hotel's New York office. *Miller, supra,* at 478–481, 176 N.Y.S.2d 318, 151 N.E.2d 874.

*Inc.*, 304 F.Supp.2d 463, 465–466 (W.D.N.Y.2003). He noted:

> "The travel agents referenced would not be employees of defendants and would merely be one of thousands of independent travel agents throughout the world who could make arrangements for their customers to attend various facilities, including this casino. That activity would not constitute 'systematic and continuous' business by defendants in New York State based on existing case law. *See Hinsch v. Outrigger Hotels Hawaii,* 153 F.Supp.2d 209, 213 (E.D.N.Y.2001) (that independent travel agents make reservations and accept payments on behalf of resort does not subject resort to jurisdiction in New York under § 301) * * *." *Id.* at 465.

Like the travel-wholesaler in *Miller* and the travel-agents in *Smith,* Travel Impressions seeks business for various entities and is therefore not "primarily employed" by Prospect Reef within the meaning of *Wiwa.* Accordingly, Prospect Reef is not subject to general jurisdiction under section 301 on the basis of its relationship with Travel Impressions.

This Court must now address Heidle's argument that Prospect Reef's website subjects it to such jurisdiction. In ad-

dressing whether Prospect Reef's website subjects it to general jurisdiction in New York, the parties have addressed the "sliding scale" analysis set forth in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119 (W.D.Pa.1997) (categorizing websites as "passive", "active" and "interactive" for purposes of determining whether specific jurisdiction exists). *Zippo,* however, involved an application of specific jurisdiction rather than general jurisdiction, which latter is applicable here.[18] Consequently, this Court will not rely on *Zippo* or its progeny and does not address whether such analysis is applicable in the general jurisdiction context.

Even assuming *arguendo* that Heidle could demonstrate that Prospect Reef was subject to general jurisdiction in New York under section 301, it is questionable whether the exercise of personal jurisdiction over Prospect Reef would satisfy federal due process requirements. Travel Impressions only booked eleven (out of 2,261) reservations for customers at Prospect Reef, seven of which post-dated the filing of this action. Consequently, this Court questions whether Prospect Reef had sufficient minimum contacts with New York when this action was filed to satisfy federal due process requirements.[19] Inas-

---

**18.** Courts are split as to whether the *Zippo* analysis is applicable with respect to general jurisdiction. *See, e.g., Lakin v. Prudential Securities, Inc.,* 348 F.3d 704, 711 (8th Cir.2003) (noting the split of authority). Nonetheless, courts in this Circuit appear to apply the *Zippo* analysis only in the specific jurisdiction context. *See, e.g., In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000,* 2003 WL 22909153, at *2–3 (S.D.N.Y.2003). In any event, the *Zippo* analysis does not replace the traditional approach for determining the existence of personal jurisdiction over a certain defendant. *See, e.g., Best Van Lines, Inc. v. Walker,* 2004 WL 964009, at *2–3 (S.D.N.Y. 2004) (discussing *Zippo* and its progeny and noting that "[a]lthough this 'sliding scale' model provides a useful guide to how courts have approached such claims in the recent

past, it does not amount to a separate framework for analyzing internet-based jurisdiction, and traditional statutory and constitutional principles remain the touchstone of the inquiry").

**19.** *See, e.g., Drucker Cornell v. Assicurazioni Generali, S.p.A.,* 2000 WL 284222, at *2 (S.D.N.Y.2000) (finding that defendant was not subject to personal jurisdiction in New York merely because its website was accessible to New York residents and noting that "even if such an exercise of jurisdiction were proper under § 301, it would not be permissible under the Due Process Clause absent, at a minimum, an allegation that [defendant's] use of the website was purposefully directed toward New York").

much as this Court finds that it lacks personal jurisdiction over Prospect Reef, it will not address Prospect Reef's *forum non conveniens* argument.[20]

Although this action will be dismissed, this Court feels compelled to address one of Prospect Reef's discovery responses. Prospect Reef suggested that Heidle

> "elected to draft its [sic] interrogatories in such a manner as to ask for *current information* as of the time Prospect Reef responded to the Interrogatories. For example, Interrogatory Number 5 requested 'Please identify any tourism office, travel agent, or other entity or individual *used* by the defendant in the State of New York or other states * * *.' " (Reply Aff. Of Kenneth R. Kirby, Esq. ¶ 7) (emphasis added)

Despite Prospect Reef's characterization to the contrary, Interrogatory No. 5 was not limited to "current" information—as indicated by the open ended use of the term "used." Moreover, Prospect Reef's response to Interrogatory No. 5 is troubling because it stated in relevant part that "none of [the following companies] are located in New York State: * * * © Travel Impressions, 465 Smith Street, Farmingdale, New York 11735, USA." *Ibid.* Although Prospect Reef's response may have been made in error,[21] when construed in conjunction with its asserted (and erroneous) construction of Heidle's interrogatory, this Court is left with the distinct impression that Prospect Reef failed to, in part,

respond to Interrogatory Number 5 (and perhaps others) in an appropriate manner.

Accordingly, it is hereby **ORDERED** that defendants' motion to dismiss for lack of personal jurisdiction is granted, that this action is dismissed without prejudice to being filed in the British Virgin Islands or elsewhere and that the Clerk of this Court shall close this case.

---

**20.** *In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000,* 230 F.Supp.2d 376 (S.D.N.Y. 2002), at 386–387. Nonetheless, several federal courts in New York have dismissed personal injury actions based on the doctrine of *forum non conveniens* where the evidence of and witnesses to an accident are located in a foreign country—in addition to the fact that the local forum is more familiar with the law to be applied and is in a position to view the situs of the accident. *See, e.g., Karlitz v. Re-*

*gent Int'l Hotels, Ltd.,* 1997 WL 88291, at *4–5 (S.D.N.Y.1997) (slip-and-fall at Hong Kong hotel); *Becker v. Club Las Velas,* 1995 WL 267025, at *4–5 (S.D.N.Y.1995) (kayaking accident at Mexican resort).

**21.** Prospect Reef suggested that it interpreted Interrogatory No. 5 as inquiring of its New York agents and that it adopted the position that it had none.